IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NABIL (Last Name Unknown), *et al.*,  )<br>  )<br>Petitioners,  )<br>  )<br>v.  )<br>  )<br>GEORGE W. BUSH,  )<br>President of the United States,  )<br>*et al.*,  )<br>  )<br>Respondents.  )<br>  ) | Civil Action No. 05-CV-1504 (RMC) |

**PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION FOR ORDER
TO SHOW CAUSE OR, IN THE ALTERNATIVE,
TO STAY PROCEEDINGS AND REQUEST FOR STATUS HEARING**

Mr. Nabil, who is the detainee, and Mr. Jamaal Kiyemba, who is the Next Friend of Mr. Nabil ("Petitioners"), through their attorneys, Holland & Hart, LLP, respectfully oppose the Respondents' Motion for Order to Show Cause Why Case Should Not be Dismissed for Lack of Proper "Next Friend" Standing or, In the Alternative, to Stay the Proceedings Pending Related Appeals and For Continued Coordination.  Petitioners request that these motions be denied and that instead the Court schedule a status hearing at its earliest convenience.

Respondents now freely acknowledge that Mr. Nabil and other detainees are entitled to be represented by counsel for the purpose of seeking a writ of habeas corpus. They suggest that there are processes by which detainees are notified of their right to file a habeas petition (including through a "friend") and to request counsel.  They tout a new process negotiated with the American Bar Association ("ABA"), thereby

-1-

acknowledging that there should be a meaningful process for advising detainees of their habeas rights and for allowing them to request representation by counsel. If Respondents' intention is to provide such a meaningful process, then their attack on standing is inconsistent. It suggests that Respondents' true intention is impediment and delay.

The Court should reject impediment and delay and deny the Respondents' motion so that counsel have a reasonable opportunity to confer with Mr. Nabil directly and to obtain his written instructions. Petitioners request that a status hearing be scheduled at the Court's earliest convenience to ensure that this occurs.

Respondents' alternative motion for stay must also be denied because not all of the legal issues raised in the Petition are pending before the D.C. Circuit Court of Appeals. In particular, many of the claims asserted by the Petitioners challenge the legality of and the government's adherence to the Military Order of November 13, 2001, issued by Respondent Bush. None of the appellate proceedings upon which Respondents base their Motion to Stay involve such claims. Because such claims are not before the D.C. Circuit, there is no reason to delay Petitioner's ability to pursue such claims, and the interest of judicial efficiency – the core rationale for Respondents' Motion to Stay – would not be served by staying this matter. Even if the Court were to stay Mr. Nabil's Petition, however, that stay should not delay or impede Mr. Nabil's right to consult with counsel.

# ARGUMENT

**I. RESPONDENTS' MOTION FOR ORDER TO SHOW CAUSE SHOULD BE DENIED AND INSTEAD THE COURT SHOULD SCHEDULE A STATUS CONFERENCE TO ENSURE THAT MR. NABIL MAY PROMPTLY CONSULT WITH COUNSEL.**

Mr. Nabil's Petition for Writ of Habeas Corpus was filed in his own name and also on his behalf by Jamaal Kiyemba as his Next Friend. Respondents now argue that the Petitioners must establish proper "next friend" standing or the case should be dismissed. It is neither necessary nor appropriate, however, for the Court to issue an order to show cause and Respondents' motion should be denied.[1]

The very need for Mr. Kiyemba to act as Mr. Nabil's "Next Friend" is due to Respondents' *own* policies. According to the Department of Defense, the only counsel currently provided access to the detainees are counsel who are employed or retained by or on behalf of a detainee for purposes of representing the detainee in habeas corpus or other litigation in federal court in the United States…." (Letter to Mr. Shayana Kadidal, dated November 2, 2004, Exhibit E to Declaration of Barbara Olshansky dated September 9, 2005, attached hereto as Exhibit 1.) Therefore, under Respondents' own procedures counsel must first file a habeas corpus petition on behalf of a detainee in order to meet with the detainee, and the only petition that counsel can file before such a meeting is a Next Friend petition. Ironically, Respondents now attack the very process they propounded. The written notifications Respondents cite in support of their Motion specifically state that "you may ask a *friend*…to file such a petition with the Court."

---

[1] Petitioners reserve their legal and factual arguments in support of standing for briefing in the unlikely event the Court issues an order to show cause.

*See* Declaration of Frank Sweigart, attached to Respondents' Motion as Exhibit B, at ¶¶ 3-5 and attached exhibits. Emphasis added. The notifications do not say that the detainee must seek the assistance of "an individual satisfying the standing requirements under federal law for Next Friend status."

Notwithstanding the contradictory relief sought in Respondents' motion, one thing is now clear: they freely acknowledge that Mr. Nabil and other detainees are entitled to be represented by counsel for purposes of seeking a writ of habeas corpus. Mr. Sweigert declares that unnamed detainees in various categories have been informed that they could file a writ of habeas corpus in federal court if they want to challenge the lawfulness of their detention. *See* Declaration of Frank Sweigart, ¶¶ 3-5 and Exhibits A, B and C.[2] The notifications state, *inter alia*:

> You may ask a friend or family member or a lawyer to file
> such a petition with the Court. If you do not have a lawyer
> or a family member or a friend who could file this petition
> for you, you may file your own petition.

Mr. Sweigart also briefly describes a new process the Department of Defense has negotiated with the American Bar Association ("ABA") by which "the ABA has agreed to recruit volunteer counsel for *pro se* petitioners and other detainees who may desire representation." Declaration of Frank Sweigart, ¶7 and Exhibit E thereto. The involvement of the ABA is a positive step and only confirms that the Respondents now

---

[2] Petitioners do not concede the adequacy of the notifications described in Mr. Sweigart's Declaration and reserve all arguments in that regard. Moreover, Mr. Sweigart does not provide *any* information specifically about Mr. Nabil. He does not confirm what category of detainee Mr. Nabil falls within or that a notification was in fact served upon him. He does not reveal whether the notification was provided in a language Mr. Nabil can understand, whether Mr. Nabil in fact understood his rights as set forth in the notification or whether he was in a position to act on those rights.

acknowledge that there must be a meaningful process for advising detainees of their habeas rights and for allowing them to request representation by counsel. Whether this new ABA process will be meaningful remains to be seen, however. For example, Respondents' Motion and the Declaration of Frank Sweigart are both worded ambiguously so that it is not clear whether the notification will be provided to *all* detainees or only to those who have previously filed *pro se* petitions or have previously requested counsel. If the ABA notification is not given to all detainees, it would be deficient on its face.

But even assuming the new ABA process will be meaningful, that does not provide a basis for issuing an order to show cause. Respondents argue that given the past notifications and the new ABA process, if Mr. Nabil wanted to file a petition for writ of habeas corpus, he would (or will) do so on his own behalf. They suggest that these "next friend" petitions must therefore be subjected to rigorous scrutiny under an order to show cause to determine whether the requirements of Whitmore v. Arkansas, 495 U.S. 149 (1990) have been met. The futility and waste of this exercise is obvious. Even if the Court were to issue an order to show cause, even if "next friend" standing were thoroughly briefed and even if Mr. Nabil's petition were dismissed for lack of standing, presumably Mr. Nabil nevertheless would be given the ABA notice. In all likelihood, he would send the card to the ABA requesting counsel; the ABA would appoint counsel (likely the counsel who filed the original petition) and the same petition for writ of habeas corpus would then be re-filed after months or years of delay. If the Respondents' position is that this is the process that must be followed – a process with

no meaningful legal significance – they will have confirmed allegations that their principal objective is impediment and delay.

There is an obvious solution: deny the motion for order to show cause and allow the consultative process to proceed. The opportunity to consult directly with counsel would assure that Mr. Nabil understands the notification purportedly given to him and the new ABA processes and would allow counsel to obtain Mr. Nabil's written instructions. In this way, the Court can be assured that Mr. Nabil has made an informed decision, rather than having to infer that Mr. Nabil does not want counsel and wishes to stay in detention indefinitely, as the Respondents would have.

Respondents themselves confirm the reasonableness of allowing the consultative process to proceed:

> Even if the Court finds that petitioners have established next friend standing so that the Court can exercise jurisdiction over the petitions, the next friends should not be permitted to serve in this capacity beyond the time when counsel are permitted to meet with the detainees for whom habeas relief is sought. (*citations omitted*)…(permitting counsel two visits with a detainee before an authorization of representation by the detainee must be provided to respondents.) *At that time, counsel should determine these detainees' wishes concerning pursuing a challenge to their detention through the habeas petitions in these cases, such that the cases can then either be converted into direct petitions or be dismissed.*

Motion, footnote 12. Emphasis added.

Petitioners respectfully request that the motion for order to show cause be denied to allow the consultative process to proceed. The Court should understand, however, that there are other serious impediments to Mr. Nabil's consultation with counsel. The

-6-

Department of Defense is taking months to process security clearances, for example. (*See also* the impediments described in the Declaration of Barbara Olshansky.) To ensure that Mr. Nabil is given effective notice of his rights and a prompt and real opportunity to consult with counsel, the Petitioners respectfully request that the Court schedule a status conference at its earliest convenience.

## II. RESPONDENTS' ALTERNATIVE MOTION FOR STAY SHOULD BE DENIED BECAUSE THE CLAIMS ASSERTED BY MR. NABIL HAVE NOT BEEN ADDRESSED BY ANY DISTRICT COURT AND ARE NOT BEFORE ANY APPELLATE COURT

Respondents contend that if this matter is not dismissed for lack of standing, this case should be stayed because all of the issues raised in the Petition are currently pending on appeal before the D.C. Circuit Court of Appeals. Respondent's Motion at 15. This contention, however, is inaccurate. Petitioners assert a number of claims based on and challenging the Military Order of November 13, 2001, "Detention of Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism," 66 Fed. Reg. 57,833 (November 13, 2001) ("Military Order"). Among other things, the Military Order requires that "[a]ny individual subject to this order shall be … (b) treated humanely, without any adverse distinction based on race, color, religion, gender, birth, wealth, or any similar criteria …." Military Order, § 3(b). None of the appellate proceedings upon which Respondents base their Motion to Stay involve claims which challenge the legality of the Military Order or the government's failure to abide by the terms of the Military Order. Accordingly, there is no reason to stay Petitioners' rights to pursue these claims.

Among the allegations related to the Military Order which are asserted in the Petition are the following:

- The Military Order exceeds the Executive's authority under Article II of the United States Constitution, and is *ultra vires* and void on its face (Petition at ¶ 40);
- The Military Order was neither authorized nor directed by Congress, and is, therefore, beyond the scope of Joint Resolution 23, authorizing the use of military force, which was passed by Congress on September 18, 2001 (Petition at ¶ 41);
- The Military Order unlawfully authorizes indefinite and unreviewable detention (*Id.* at ¶ 48);
- The Military Order violates the Fifth Amendment of the United States Constitution (*Id.* at ¶ 103);
- Even if the Military Order were legitimate and lawful, the conditions of Petitioner Nabil's detention at Guantanamo violate the requirements of the Military Order (*Id.* at ¶¶ 60 – 83), and;
- The government's practice of engaging in extraordinary rendition of Guantanamo detainees violates the provisions of the Military Order (*Id.* at ¶¶ 84 – 88).

Additionally, the Prayer for Relief in the Petition seeks specific relief with respect to the Military Order, including an order declaring that the Military Order is unlawful, or

in the alternative, for an order requiring the government to comply with the provisions of the Military Order.

Respondents' Motion to Stay is predicated on pending appeals of three separate rulings issued by different judges in this District. In particular, the Motion relies on orders issued by Judge Leon dismissing claims in <u>Khalid v. Bush</u>, No. 04-CV-1142 (RJL), and <u>Boumediene v. Bush</u>, No. 04-CV-1166 (RJL), 355 F. Supp.2d 311 (D.D.C. 2005); and an order issued by Judge Green denying in part and granting in part the government's motion to dismiss claims in <u>In re Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et</u>. <u>al</u>, 355 F. Supp.2d (D.D.C. 2005). Each of these orders is currently pending before the D.C. Circuit. None of these pending appeals involves claims challenging the legality of the Military Order, or the government's adherence to its provisions. Judge Leon specifically noted in the <u>Boumediene</u> and <u>Khalid</u> matters, for example, that the Petitioners did not challenge the legality of the Military Order. 355 F. Supp.2d at 324. Because such claims were not raised in <u>In re Guantanamo Detainee Cases</u>, <u>Boumediene</u>, or <u>Khalid</u>, the viability of such claims is not currently pending before the D.C. Circuit.

The fundamental premise of Respondents' Motion to Stay is that the issues raised in the Petition are all included within the scope of the matters on appeal before the D.C. Circuit, and that it would be a waste of judicial resources to allow this matter to move forward until those issues are resolved on appeal. However, that argument is inapposite in this case, where there are issues that are not before the D.C. Circuit. There is no reason why Petitioners should be required to wait to pursue these claims until appeals in

-9-

other cases addressing different issues are concluded. Given the concerns raised by the Petition, including whether there is a sufficient legal basis for Mr. Nabil's indefinite detention and whether the government has complied with mandate of the Military Order to treat Mr. Nabil humanely, the government should be required to present a compelling justification for delaying Petitioners' ability to proceed with this matter. The only justification offered by Respondents for entering the requested stay does not apply to Petitioners' Military Order claims, and for that reason, the Motion to Stay should be denied.

Alternatively, even if the Court were inclined to grant the Motion to Stay, Petitioners request that the Court order the Government to submit a factual return in response to the Petition. The Respondents have acknowledged in their motion that, even if the requested stay is granted, counsel for Petitioners should nevertheless be entitled to communicate with Petitioners, pursuant to the procedures that have been established to protect against the unauthorized dissemination of classified information. Counsel's ability to engage in such communications in a meaningful manner would be significantly impaired if the government were not required at least to provide counsel with a factual return outlining the alleged basis for Petitioner Nabil's detention. It should be noted that Respondents have been specifically ordered to provide factual returns in six other cases, despite the fact that the cases had otherwise been stayed.[3]

---

[3] *See, e.g.*, *Kurnaz* v. *Bush*, 04-CV-01135 (ESH), 2005 WL 8329542, at *1 (D.D.C. Apr. 12, 2005) (stating that habeas counsel require access to the full factual returns now "to ensure that the proceedings can continue in an orderly fashion in the event that detainees prevail on appeal"); *Al-Adahi* v. *Bush*, 05-CV-00280 (GK), slip op. at 2 & n.1 (D.D.C. Apr. 29, 2005) (ordering production of factual

WHEREFORE, Petitioners respectfully request that the Court deny Respondents' Motion for Order to Show Cause, as well as its alternative Motion to Stay, and to schedule a status conference to discuss the process by which Counsel for Petitioners will be provided a meaningful and timely opportunity to confer with their clients. Petitioners further request that in the event that the Court grants the Motion to Stay, that the Court order that Respondents provide Petitioners with a factual return in response to the Petition within a reasonable time.

---

returns so that petitioners' counsel "can begin preparing their defense well in advance of any ruling by the Court of Appeals"); *Al-Anazi* v. *Bush*, 05-CV-00345 (JBD), slip op. at 20 (D.D.C. Apr. 21, 2005) (ordering the U.S. Government to produce factual returns and noting that "the factual returns appear necessary for petitioners' counsel effectively to represent petitioners," and "even initial conversations by counsel with their clients may be very difficult without access to that basic factual information"); *see also Al-Shamri* v. *Bush*, 05-CV-00551 (RWR), slip op. at 4 (D.D.C. May 10, 2005) (staying proceedings but ordering the Government to produce factual returns); *El-Banna* v. *Bush*, 04-CV-01144 (RWR), slip op. at 7 (D.D.C. Apr. 8, 2005) (same); *Errachidi* v. *Bush*, No. 05-CV-00640 (EGS) (D.D.C. Apr. 21, 2005) (minute order) (same).

-11-

Respectfully submitted,

Counsel for Petitioners:

/s J. Triplett Mackintosh
_____1_____
J. Triplett Mackintosh (Colorado State Bar #22359)
Todd W. Miller (Colorado State Bar #16306)
Charles R. Lucy (Colorado State Bar #33456)
Rick D. Bailey (Colorado State Bar #26554)
Hamid M. Khan  (Colorado State Bar #34139)
James E. Williams (Colorado State Bar #34727)
Hillary M. Hebert (Colorado State Bar #35906)
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202
Telephone:  (303) 295-8000

Of Counsel
Barbara J. Olshansky (New York State Bar #3635)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
New York, New York 10012
Telephone: (212) 614-6439

-13-

## CERTIFICATE OF SERVICE

I certify that on September 12, 2005, I served a copy of the foregoing document to the following by electronic filing and also by U.S. Mail.

c/o Preeya Noronha
Peter D. Keisler
Joseph H. Hunt
Kenneth L. Wainstein
Douglas N. Letter
Vincent M. Garvey
Terry M. Henry
James J. Schwartz
Robert J. Katerberg
Nicholas J. Patterson
Andrew I. Warden
Edward H. White
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W. Room 7144
Washington, DC  20530
preeya.noronha@usdoj.gov

/s Danielle R. Voorhees_____
Danielle R. Voorhees
Holland & Hart LLP
555 17TH STREET, SUITE 3200
DENVER, CO  80202

3448201\_3.DOC