## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: GUANTANAMO BAY DETAINEE LITIGATION | ) ) ) ) ) | Misc. No. 08-0442 (TFH) |
| MOTAI SAIB, *et al.*, Petitioners/Plaintiffs, v. GEORGE W. BUSH, *et al.*, Respondents/Defendants. | ) ) ) ) ) ) ) ) ) ) | Civil No. 05-CV-1353 (RMC) |
| NABIL HADJARAB, *et al.*, Petitioners/Plaintiffs, v. GEORGE W. BUSH, *et al.*, Respondents/Defendants. | ) ) ) ) ) ) ) ) ) ) | Civil No. 05-CV-1504 (RMC) |
| ABBAR SUFIAN AL HAWARY, *et al.*, Petitioners/Plaintiffs, v. GEORGE W. BUSH, *et al.*, Respondents/Defendants. | ) ) ) ) ) ) ) ) ) ) | Civil No. 05-CV-1505 (RMC) |
| SUFYIAN BARHOUMI a/k/a SHAFFIQ, *et al.*, Petitioners/Plaintiffs, | ) ) ) ) ) | |

|                                               |   |                              |
|-----------------------------------------------|---|------------------------------|
| v.                                            | ) | Civil No. 05-CV-1506 (RMC)   |
|                                               | ) |                              |
| GEORGE W. BUSH, *et al.*,                     | ) |                              |
|                                               | ) |                              |
| Respondents/Defendants.                       | ) |                              |
|                                               | ) |                              |

**PETITIONERS' RESPONSE TO RESPONDENTS'
MOTION FOR RELIEF FROM SCHEDULING ORDER**

The Court should strike Respondents' motion.  First, Respondents failed to confer with Petitioners' counsel in violation of Local Civil Rule 7(m).  The Court has severely sanctioned parties in other cases for less consequential violations of the rule.  Second, Respondents filed their motion so late—literally, at the last minute, 11:59 p.m., on August 29, 2008—as to secure for themselves in substantial measure the very relief their motion seeks, without a ruling on their motion.  The Court should not countenance such self-help.

Alternatively, the Court should deny Respondents' motion.  First, the motion makes clear that Respondents do not consider themselves bound by deadlines set by the Court.  No private party would dare treat the Court's deadlines as merely aspirational or be allowed to do so. Second, granting the motion would substantially prejudice Petitioners by delaying their habeas hearings, contrary to the Supreme Court's admonition in *Boumediene* that Petitioners are entitled to "a *prompt* habeas corpus hearing" and must no longer be made to bear "the costs of delay." Third, Respondents' excuses are unpersuasive; their difficulties are of their own making.

The Court should order Respondents to adhere to the Scheduling Order.  Moreover, the Court should:  1) deny all late-filed motions to amend, including motions due by August 29, 2008, unless a Petitioner waives his objection to a late filing; 2) Order the Government to provide factual returns within 7 days for those Petitioners whose factual returns are now past-due and who have not yet received one; 3) preclude the government from seeking further

2

amendments absent consent; and 4) reserve the right to impose default judgment of release for further violations of the scheduling order. Nothing less will do to ensure Respondents' compliance with the Court's deadlines and protect Petitioners' rights.

## STATEMENT OF FACTS

1.    On July 8, 2008, the Court held a status conference at which it invited the parties to express their views as to how these cases should be managed and scheduled. Respondents asked to be allowed until the end of August to file motions for leave to amend factual returns in the first fifty cases and to continue filing motions for leave to amend returns at a rate of fifty per month after that. *See* Notice by Resp'ts, Misc. No. 08-442 (July 9, 2008) (Doc. 39). Respondents assured the Court that their request for a "short lead time" would best facilitate expeditious adjudication of the cases (*id.*), and that they were "dedicating substantial resources to facilitate the expeditious handling of these cases." *Id.* at Ex. A, Letter from Gregory G. Katsas to Hon. Royce C. Lamberth and Hon. Thomas F. Hogan (June 30, 2008).

2.    The Court gave Respondents the scheduling order they had requested. In so doing, however, the Court admonished Respondents to make known to other agencies that proceedings in these cases must be a top priority:

> I think the government has to understand, they're going to set aside every other case that's pending before them in their division, and address these cases first. Put them on notice that I expect the corresponding agencies to do the same; that they're now in a court process, the Supreme Court has spoken, has asked strongly that these be handled promptly.

July 8, 2008 Hearing Tr. at 82. The Court also warned that delays would be granted only "rarely" and only upon a showing of good cause:

> I'm concerned about time and extensions. And whatever I decide, I would anticipate the parties will follow and that motion[s] for extension will be rarely granted. And that any type of extension would have to be approved by the court. It makes no sense to set a schedule to make continuances.

3

*Id.* at 60.

3. Respondents now request an additional thirty days to complete their filing of the first round of returns and offer the Court only their "hope" that they will meet later deadlines, *see, e.g.*, Resp'ts' Mot. at 1, and a pledge to "strive" to do so, *id.* at 12.  Nowhere in Respondents' motion do they assure the Court that they *will* comply with any deadline.  It does not take a crystal ball to anticipate what Respondents will be telling the Court a month from now.

## ARGUMENT
### I.   THE COURT SHOULD STRIKE RESPONDENTS'' MOTION.

#### A.   Respondents Violated Local Civil Rule 7(m).

Local Civil Rule 7(m) provides, in pertinent part:

> Before filing any nondispositive motion in a civil action, counsel
> shall discuss the anticipated motion with opposing counsel, either
> in person or by telephone, in a good-faith effort to determine
> whether there is any opposition to the relief sought and, if there is
> opposition, to narrow the areas of disagreement.

Rule 7(m) serves important institutional purposes, and this Court does not treat violations of the rule lightly.  *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006).[1]  It is of no moment that the litigants believe that conferring would be pointless.  As Judge Hogan has stated:

> A meet and confer session is required under Local Civil Rule
> 7.1(m) regardless of whether or not the litigants believe it will be
> productive.  *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp.
> 2d 23, 27 (D.D.C. 2001) (Hogan, C.J.).  The purpose of this rule is

---

[1] *See Penobscot Indian Nation v. HUD*, Civ. No. 07-1282 (PLF), 2008 WL 635740, at *1 (D.D.C. Mar. 5, 2008) (order denying motion to strike); *Humane Soc'y v. Amazon.com, Inc.*, Civ. No. 07-623 (CKK), 2007 WL 1297170, at *3-4 (D.D.C. May 1, 2007) (denying motion for leave to depose); *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 (D.D.C. 2002). *See also United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008) (denying motion to strike because party failed to comply with Rule 7(m) and to meet its heavy burden in filing its motion to strike).

> "for litigants to attempt to resolve, or . . . narrow, the disputed issues to prevent unnecessary waste of time and effort on any given motion," not "to simply determine whether the motion will be opposed." *Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C. 1999) (Lamberth, J.).

*Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 71 n.7 (D.D.C. 2002) (Hogan, C.J.); *see also United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008).

To be sure, the Court has occasionally stopped short of sanctioning an offending party, instead admonishing the party to comply with the rule in the future.[2] Such cases, however, are the exception, not the rule; and the government, of all litigants, is not entitled to such leniency, especially where, as here, so much is at stake. *See Gray Panthers v. Schweiker*, 716 F.2d 23, 33 (D.C. Cir. 1983) ("There is, indeed, much to suggest that government counsel have a higher duty to uphold because their client is not only the agency they represent but also the public at large.").

**B.    Granting The Motion Would Reward Respondents' Self-Help.**

Respondents obviously knew before the August 29, 2008 deadline that they did not expect to meet the deadline. They could have alerted Petitioners' counsel and the Court that they intended to seek relief from the deadline, leaving enough time for consideration of their motion before the deadline. Instead, Respondents waited until the last minute to file their motion for relief. By filing their motion so late, Respondents secured for themselves in substantial measure the very relief their motion seeks, without having to justify their request for relief to the Court. This practice should not be tolerated. As Justice Rehnquist, sitting as a Circuit Justice, stated in an analogous context:

---

[2]    *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 31-32 (D.D.C. 2007); *Alexander v. F.B.I.*, 186 F.R.D. 197, 199 (D.D.C. 1999); *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 71 (D.D.C. 2002).

> To use the technique of a last-minute filing as a sort of insurance to get at least a temporary stay when an adequate application might have been presented earlier, is, in my opinion, a tactic unworthy of our profession.

*Evans v. Bennett*, 440 U.S. 1301, 1307 (1979) (Rehnquist, Circuit Justice). Indeed, the Seventh Circuit has rebuked the Department of Justice for filing a motion for an extension of time to file a brief on the day the brief was due, thereby securing the relief the government sought without a ruling on its motion. *Ramos v. Ashcroft*, 371 F.3d 948, 949-50 (7th Cir. 2004) ("Filing motions in lieu of briefs, a form of self-help extension, has become increasingly common but is not authorized by any rule, either national or local.").

The Court should strike Respondents' motion to deny them any benefit from their last-minute self-help filing.

## II.    ALTERNATIVELY, THE COURT SHOULD DENY RESPONDENTS MOTION.

### A.    Respondents Effectively Seek Leave To Miss Deadlines.

The Court should deny Respondents' motion because they do not commit themselves to meet future deadlines. Respondents' motion purports to seek "partial and temporary" relief from the deadlines set by the Court in the Scheduling Order. (Of course, there is noting "temporary" or "partial" about Respondents' request to move each monthly deadline back 30 days.) In reality, however, Respondents leave no doubt that they will consider any deadlines set by the Court purely aspirational. Thus, for example, Respondents state: "We *expect* to finish production of the first 50 returns on a rolling basis throughout September, and *hope* to achieve production of the returns at that rate each month thereafter." Resp'ts' Mot. at 4 (emphasis added). They state that they "will continue to *strive* to "meet the 50-per-month requirement." *Id.* at 12 (emphasis added). Respondents offer only to do what they can, in their own fashion and

6

at their own pace, to meet the Court's deadlines, and just too bad for Petitioners if Respondents do not come through.[3]

### B.  Granting the Motion Would Prejudice Petitioners.

The motion also should be denied because of the serve prejudice that Petitioners would suffer if the motion is granted. The prejudice from still more delay, after they have already waited more than six years for their day in court is self-evident and we need not belabor it. Petitioners are harmed each additional day that they are detained and delayed in their opportunity to present their challenges to their detention. The Supreme Court in *Boumediene*, and this Court in these proceedings, have made the point in the most emphatic terms. Petitioners have been making the point since February 2002. It is past time to permit more delay.

### C.  Respondents' Excuses For Delay Are Unpersuasive.

Although Respondents profess to encounter difficulties in obtaining timely interagency clearance of newly drafted factual returns, these alleged difficulties are entirely within Respondents' control to resolve. Respondents decided to rely "extensively" on information not previously used to justify Petitioners' detention that they have designated as classified; they delayed compiling and reviewing the information, and they decided to include DOJ narratives.

---

[3]  Petitioners do not contend that Respondents may never obtain an extension for filing a return. Scheduling Order ¶ 4 provides:

> [I]f the government believes that an individual factual return is significantly more complicated than others or a particular detainee's circumstances present unique issues that require more time to complete the return such that processing the return would delay the overall processing, the government shall move for an exception to the sequencing described above. As with amendments, the Court will only allow exceptions where the government establishes cause.

Resp'ts' Mot. at 3, 6. Such self-engineered hurdles cannot be permitted to justify Respondents' delay.

Respondents have had between twenty and fifty attorneys from DOJ and thirty attorneys from the DoD working full time on these cases. *See* id., Exh. B, Dell'Orto Decl., ¶ 3; Exh. C, Katsas Decl. ¶ 5. But Respondents have literally thousands of lawyers available to them. They easily could have secured 250 lawyers from the U.S. Attorneys' Offices around the country, from DoD, and from the Civil Division. Our clients have been incarcerated for approximately six years and the Supreme Court has stated in no uncertain terms that they are entitled to prompt hearings. The time has come for the Respondents to comply with the dictates of the courts.

Although Petitioners have not been permitted to see (and therefore object to) the *ex parte* classified portions of the declaration submitted by CIA Director Michael V. Hayden,[4] Director Hayden's unclassified declaration is sufficient to show that the government lacks any excuse for failing to meet this Court's deadline. Even after *Boumediene* was decided, on June 12, 2008, DOJ and DoD waited until July to assemble staff and resources. *See* Resp'ts' Mot. at 3. Moreover, according to Director Hayden, Respondents did not provide the first factual returns for CIA review until August 12, 2008, six weeks after Respondents first suggested a deadline of August 29, 2008, and *two months* after Boumediene was decided; and Respondents provided CIA with returns for the first fifty cases as late as August 25, 2008. *See* Hayden Decl. ¶ 19. Between fifty and eighty DOJ and DoD lawyers, therefore, took well over a month from the issuance of this Court's scheduling order, and two months after *Boumediene* was decided, to

---

[4] Petitioners also object to Director Hayden's suggestion that he be allowed to testify *in camera*, *ex parte*. Any such testimony should be under oath and subject to cross-examination by Petitioners' counsel with appropriate security clearances.

8

generate even a single draft return for CIA review. Any burden Respondents must shoulder now results from their own decision to junk the original CSRT returns and instead start from scratch, and from their failure devote adequate resources to get the job done on time. *Cf. Boumediene v. Bush*, 128 S. Ct. 2229, 2278 (2008) (Souter, J., joined by Ginsburg & Breyer, JJ., concurring) ("[W]hether one agrees or disagrees with today's decision, it is no bolt out of the blue.").[5]

The asserted difficulties in obtaining timely interagency clearance of amended factual returns do not provide a credible basis for delay. The original proceedings in first-filed habeas cases, involving habeas petitions on behalf of more than sixty Petitioners, prove the point. Respondents were able to assemble, submit for interagency classification review, and produce returns for more than fifty Petitioners within six weeks. Here, Respondents insist that it will take them about three months—nearly twice as long as in 2004—to do the same.[6]

---

[5]   The first detailed DOJ lawyers did not arrive until sometime in July; *see id.*, Exh. C, Katsas Decl. ¶ 7, and the first detailed DoD lawyers did not arrive until mid-July, *see id.*, Exh. B, Dell'Orto Decl. ¶ 3. It is no coincidence that Respondents' decision to start from scratch guarantees that habeas hearings for most Petitioners will be delayed long past the time such hearings would have been held had Respondents relied on the original returns, which Respondents long insisted were adequate to justify Petitioners' detention. All of a sudden, Respondents treat those returns as inadequate. If Respondents had not decided to start from scratch, it would have been a simple matter for them to comply with the Court's deadlines.

[6]   In a submission dated August 20, 2004 requesting coordination of the pending habeas cases, Respondents asserted, as they do here, that "the information concerning [Petitioners'] seizure and detention has not been maintained in a manner that would facilitate presentation to the Court or a format that is appropriate for submission to the Court. Thus, a significant review and assembly process is necessary to formulate appropriate responses to these petitions." Respondents' Motion To Postpone Response To Petition For Writ Of Habeas Corpus Pending Development Of Coordinated Schedule For Pending Guantanamo Bay Detainee Cases, at 10 n.6 (D.D.C. Aug. 20, 2004) (Doc. 11). As here, Respondents also told the Court that "[s]ome of the information could be classified or otherwise protected, which would require establishment of mechanisms for the segregation and handling of such information in consultation with the originating agencies." *Id.* Yet, in an August 31, 2004 submission in those proceedings, Respondents proposed (and Judge Joyce Hens Green adopted their proposal) to submit the factual returns for the sixty-plus Petitioners on a rolling basis, with the first factual returns to be submitted on or around (continued…)

Underlying Respondents' declarations explaining why Respondents have failed to meet the Court's deadline is not that they need more time to gather information, but that the CIA has decided that it must conduct a painstaking "document by document, line-by-line" review of all information in Respondents' amended returns, Resp'ts' Mot. at 10, regardless of which agency originated the information, and regardless of its classification level, to determine what information can be released to the Court and counsel who already have the security clearance required for access to this information. Despite their ability and willingness to produce classified returns to the Court and Petitioners' counsel four years ago, Respondents now assert that this time-consuming, special CIA review is required before the information can be released "outside of the Executive Branch." Resp'ts' Mot. at 7-8, 9-10. Respondents cite no authority that imposes such a requirement.

With all due respect, this self-imposed requirement appears to be a delaying tactic. Director Hayden suggests that, notwithstanding their security clearances and the severe criminal and civil sanctions they would face for unauthorized disclosure of classified information, *Petitioners' counsel cannot be trusted.* See Hayden Decl. ¶¶ 12-13. This excuse also is not credible. Over the last four years, DoD has made available to cleared counsel in multitudes of habeas cases the classified information in Petitioner's CSRT records; Respondents have never alleged, much less proven, that any counsel for Petitioners has improperly disclosed classified

---

September 8, 2004 (a week after Respondents proposed their schedule), the majority of the returns by the end of September 2004, and all of the factual returns by the week of October 18, 2004 (six weeks after Respondents proposed their schedule). Respondents substantially complied with the Court's schedule, producing more than fifty returns by October 29, 2008, less than two weeks after their proposed deadline, and less than two months after proposing the schedule. Order Setting Final Deadline For Submission Of Factual Returns, *Abdah v. Bush*, Civ. No. 04-1254 (D.D.C. Oct. 29, 2004) (Doc. 49).

information. Yet Director Hayden now asserts that, if classified information is provided to counsel, "unauthorized disclosures . . . are not only probable, but inevitable." *Id*. at ¶ 12.

Respondents' own investigators, applying Respondents' own criteria, have determined that certain of the counsel for Petitioners are of sufficient integrity, loyalty, and reliability to be trusted with certain categories of classified information. After four years of experience, Respondents cannot now in good faith say that they cannot trust counsel to have access to these very categories of classified information. Respondents certainly should not be permitted to use their unfounded mistrust of Petitioner's counsel to impose a specially invented review process for the materials that they have decided to use, and then tell the Court that the process they have imposed upon themselves is so cumbersome and time-consuming that they cannot meet deadlines Respondents themselves proposed.

## CONCLUSION

Respondents' request for relief for violation of the August 29, 2008 deadline should be denied and, for those cases where amended returns are sought, Respondents should be barred from further amendment, absent consent from Petitioners. For those cases where no factual return has yet been filed, the Court should Order the government to provide a factual return within 7 days of the Court's order and the Court should reserve its right to impose default judgment of release for further violations of the scheduling order. Such an Order will deny Respondents any benefit from their violation of the August 29, 2008 and future deadlines.

Dated: September 8, 2008

                        Respectfully submitted,

                        */s Danielle R. Voorhees*
                        Anne J. Castle
                        Scott S. Barker
                        J. Triplett Mackintosh
                        William Murane
                        Danielle R. Voorhees
                        HOLLAND & HART LLP
                        555 Seventeenth Street, Suite 3200
                        Denver, CO 80202
                        Telephone: (303) 295-8000

                        Of Counsel
                        Shayana Kadidal
                        CENTER FOR CONSTITUTIONAL RIGHTS
                        666 Broadway 7th Floor
                        New York NY 10012
                        phone: (212) 614-6438
                        fax: (212) 614-6499

                        ATTORNEYS FOR PETITIONERS

                        Zachary Katznelson
                        California Bar No. 209489
                        Cori Crider
                        Member New York Bar
                        Reprieve
                        P.O. Box No. 52742
                        London, England EC4P 4WS
                        Telephone: +44 207 353 4640
                        zachary@reprieve.org.uk
                        cori@reprieve.org.uk

                        CO-COUNSEL FOR PETITIONER NABIL HADJARAB

## CERTIFICATE OF SERVICE

      I hereby certify that on September 8, 2008, I filed and served the foregoing RESPONSE TO MOTION FOR RELIEF FROM SCHEDULING ORDER via the Court's ECF electronic filing system, which will serve:

U.S. Department of Justice
Civil Division
Terry Marcus Henry
Andrew I. Warden

                                                *s/ Danielle R. Voorhees*

3920446_1.DOC